U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

**Signed January 27, 2006**

*Barbara J. Houser*

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | § | |
| | § | |
| JOHN WILFERTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADVERSARY NO. 05-03512-BJH |
| v. | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Trustee's Motion for Summary Judgment on the Trustee's

Amended Objection to Claim of John Wilferth (Claim No. 24), as Amended (Claim No. 84) (the

"Motion"). A hearing was held on the Motion on December 19, 2005. At that time, the Court requested additional briefing from the parties. A briefing schedule was agreed to and, pursuant to that schedule, the last brief was filed on January 12, 2006. The Court took the Motion under advisement at that time.

The Court has core jurisdiction over the Motion and the parties. 28 U.S.C. §§1334 and 157(b). After considering the Motion, John Wilferth's ("Wilferth") opposition to the Motion, the briefs submitted by both parties, and the summary judgment evidence, the Court issues this Memorandum Opinion and Order that contains its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## I. UNDISPUTED FACTS

The Motion is supported by various documents contained in the Trustee's Appendix in Support of Trustee's Motion for Summary Judgment on Trustee's Amended Objection to Claim of John Wilferth (Claim No. 24), as Amended (Claim No. 84) (the "Appendix," hereinafter cited as "APP"). Wilferth's opposition is supported by various documents contained in his Appendix and Supplemental Appendix (collectively, the "Opposition Appendix," hereinafter cited in this Memorandum Opinion as "OPP APP"). Documents contained in the Appendix and/or the Opposition Appendix support the following findings of undisputed facts:

A. <u>BACKGROUND FACTS AND ALLEGATIONS OF WILFERTH'S CLAIM</u>

The Debtor is a Delaware limited liability company formed in December, 1994.[1] Prior to the Petition Date (defined below), the Debtor's operations consisted of providing services related to wealth, estate, and tax planning to extremely high net-worth individuals.[2]

---

[1] *Compare* APP TR-0002, ¶ 4 *with* APP TR-0149, ¶ 4 (admitting allegation).

[2] *See id.*

Wilferth is a 1993 graduate from Loyola University School of Law who, prior to receiving his law degree, obtained a degree in business administration from Southern Methodist University.[3]  He was licensed to practice law in the states of Missouri and Louisiana.[4]

In September 1997, the Debtor employed Wilferth pursuant to an employment agreement dated September 16, 1997 (the "Employment Agreement").[5]  A true and correct copy of the Employment Agreement is included in the Appendix as Exhibit "B" at TR-0053 through TR-0094 and the Opposition Appendix as Exhibit 1.  Among other things, the Employment Agreement contained that certain "Agreement and/or Covenant Not to Compete," and that certain "Agreements and/or Covenants Relating to Confidential Information" (together, the "Non-Compete").[6]  Wilferth read and understood the Employment Agreement prior to signing it, and was aware that it contained the Non-Compete.[7]

The Debtor terminated Wilferth's employment on or about February 19, 1998.[8]

On or about August 16, 1998, Sagemark Consulting ("Sagemark") employed Wilferth.[9]  Sagemark later became affiliated with the Lincoln Financial Group, whereupon Wilferth's employment was transferred to The Lincoln National Life Insurance Company.[10]

In July 1999, Wilferth happened to see Claudia McElwee ("McElwee"), an employee of the Debtor, and he told her that he was working as a financial services consultant for Sagemark

---

[3]  *Compare* APP TR-0002, ¶ 7 *with* APP TR-0150, ¶ 7 (admitting allegation).

[4]  *See* APP TR-0297, 7-10.

[5]  *Compare* APP TR-0002, ¶¶ 7-8 *with* APP TR-0150, ¶¶ 7-8 (admitting allegations).  *See also* APP, Exhibit B, TR-0053 – TR-0094; OPP APP, Exhibit 1.

[6]  *See* APP TR-0071 – TR-0079.

[7]  *See* APP TR-0300, 14 – TR-0301, 6.

[8]  *See* APP TR-0007, ¶ 39.

[9]  *See* APP TR-0007, ¶ 40.

[10]  *Compare* APP TR-0003, ¶ 11 *with* APP TR-0151, ¶ 11 (admitting allegation).

and was developing a customer base there.[11] Wilferth apparently told McElwee that he did "the same thing for them that I used to do for y'all."[12] While Wilferth does not remember this conversation specifically, he does not dispute it, or that he told McElwee that he did the "same thing" for Sagemark as he had done for the Debtor.[13]

McElwee passed this information on to W. Ralph Canada ("Canada"), the Debtor's president at that time.[14] Based on this information, on August 23, 1999, Canada transmitted a letter to Sagemark (the "Canada Letter") that informed Sagemark of the Non-Compete and requested that Sagemark investigate the situation.[15] A true and correct copy of the Canada Letter is included in the Appendix at TR-0032.

Sagemark terminated Wilferth's employment on or about September 1, 1999.[16] Wilferth alleges that Sagemark terminated his employment as a direct result of the Canada Letter.[17]

B. **PREPETITION LITIGATION**

In November 2000, Wilferth initiated a lawsuit against the Debtor (the "State Court Action") in the 68th District Court of Dallas County, Texas (the "State Court") asserting claims for injunctive relief and declaratory relief. Specifically, Wilferth sought a judgment enjoining the Debtor from enforcing the Non-Compete and determining that the Non-Compete was void.[18] A true and correct copy of Wilferth's petition in the State Court Action is included in the

---

[11] *Compare* APP TR-0003, ¶ 12 *with* APP TR-0151, ¶ 12 (admitting allegation). *See* APP TR-007 ¶ 41.

[12] *See* APP TR-0314, 23 – TR-0315, 18.

[13] *See* APP TR-0305, 14-22.

[14] *See id. Compare* APP TR-0003, ¶ 12 *with* APP TR-0151, ¶ 12 (admitting allegation). *See also* APP TR-007 ¶ 41.

[15] *Compare* APP TR-0003, ¶ 13 *with* APP TR-0151, ¶ 13 (admitting allegation). *See* APP TR-0008, ¶ 42.

[16] *Compare* APP TR-0003, ¶ 15 *with* APP TR-0152, ¶ 15 (admitting allegation).

[17] *See* APP TR-0008 ¶ 42.

[18] *See* APP TR-0008 ¶ 44.

Appendix as Exhibit "C" at TR-0095 through TR-0100 and the Opposition Appendix as Exhibit 7. Wilferth also asserted a claim against the Debtor for tortious interference with Wilferth's contractual relationship in the State Court Action.[19] Wilferth did not assert any claim for breach of the Employment Agreement in the State Court Action.[20]

In February, 2001, the State Court entered an order directing the parties to arbitrate the claims raised in the State Court Action.[21] A true and correct copy of the State Court Order is included in the Opposition Appendix as Exhibit 8. Thereafter, on or about March 18, 2002, Wilferth filed a demand with the American Arbitration Association, thereby initiating proceeding number 71-116-0033102 (the "Arbitration Proceeding").[22] A true and correct copy of Wilferth's arbitration demand is included in the Appendix as Exhibit "D" at TR-0101.

As reflected in Wilferth's arbitration demand, the nature of the dispute in the Arbitration Proceeding was identified as "tortious interference with business relationships or expectations and/or with at will business relationship."[23] The arbitration demand does not mention any claim for breach of the Employment Agreement.[24]

## C.    THE BANKRUPTCY CASE

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), on May 17, 2004 (the "Petition Date"), thereby initiating the above-referenced bankruptcy case (the "Bankruptcy Case") and creating its bankruptcy estate (the "Estate").[25]

---

[19] *See id.  See also* APP TR-0100.

[20] *See* APP TR-0095 – TR-0100.

[21] *Compare* APP TR-0004, ¶ 21 *with* APP TR-0153, ¶ 21 (admitting allegation).

[22] *See id.*

[23] *See id.  See also* APP TR-0101.

[24] *See* APP TR-0101.

[25] *Compare* APP TR-0001, ¶ 1 *with* APP TR-0148, ¶ 1 (admitting allegation).

On August 16, 2004, the Trustee was appointed to serve as the Chapter 11 trustee of the Estate, which appointment was confirmed and approved by order entered on August 17, 2004.[26]

The filing of the Bankruptcy Case stayed the Arbitration Proceeding.[27]

**D.** **WILFERTH'S CLAIMS AND RELATED PROCEEDINGS IN THE BANKRUPTCY CASE**

The Court set September 15, 2004, as the last date to timely file proofs of claim (the "Bar Date") in the Bankruptcy Case.[28]

On or about September 14, 2004, Wilferth filed a proof of claim, assigned Claim No. 24 by the Clerk of the Court (the "Original Claim"), whereby Wilferth asserted a general unsecured claim against the Debtor in the amount of $750,000.00 for "breach of employment contract and damages."[29] The Original Claim is a one-page document, and included no supporting evidence, pleadings, or other documentation.[30] A true and correct copy of the Original Claim is included in the Appendix as Exhibit "E" at TR 0102 and the Opposition Appendix as Exhibit 10. The Original Claim contains no mention of the Canada Letter, Wilferth's termination by Sagemark, the State Court Action, or the Arbitration Proceeding.[31]

On April 27, 2005, the Debtor (now out-of-possession), together with GMK Holdings, LLC, the managing owner in the Debtor, filed their *Objection to Claim No. 24 Filed by John Wilferth* (the "Debtor's Claim Objection") [Bankruptcy Case docket no. 320], objecting to the Original Claim on the basis that the Debtor was not liable to Wilferth.[32] A true and correct copy

---

[26] *Compare* APP TR-0001, ¶ 2 *with* APP TR-0149, ¶ 2 (admitting allegation).

[27] *See* APP TR-0008 – TR-0009 ¶ 45.

[28] *See* APP TR-0006, ¶ 34.

[29] *See* APP, Exhibit E at TR-0102.

[30] *See* APP TR-0102.

[31] *See id*.

[32] *See* APP TR-0006, ¶ 35.

of the Debtor's Claim Objection is included in the Appendix as Exhibit "F" at TR-0103 through TR-0107.

On May 26, 2005, *John Wilferth's Response to Heritage's Objection to Claim No. 24* (the "Wilferth Response to Debtor's Objection") [Bankruptcy Case docket no. 355] was filed,[33] a true and correct copy of which is included in the Appendix as Exhibit "G" at TR-0108 through TR-0145. The Wilferth Response to Debtor's Objection is the first document filed by Wilferth with this Court that references any claim by Wilferth for tortious interference with contract.

On June 8, 2005, the Honorable Steven A. Felsenthal[34] ordered the Debtor's Claim Objection and the Wilferth Response to Debtor's Objection converted into an adversary proceeding, and the above-styled and numbered adversary proceeding was opened by the Clerk of the Court (the "Adversary Proceeding").[35]

On July 18, 2005, the *Trustee's Objection to Claim of John Wilferth (Claim No. 24)* (the "Trustee's Claim Objection") [Bankruptcy Case docket no. 476] was filed, whereby the Trustee objected to the allowance of the Original Claim in any amount.[36] A true and correct copy of the Trustee's Claim Objection is included in the Appendix as Exhibit "I" at TR-0148 through TR-0160.

On August 18, 2005, *John Wilferth's Response to Trustee's Objection to Claim of John Wilferth (Claim No. 24)* (the "Wilferth Response to Trustee's Objection") [Bankruptcy Case docket no. 510] was filed,[37] a true and correct copy of which is included in the Appendix as Exhibit "J" at TR-0161 through TR-0208.

---

[33] *See id.*

[34] Upon Judge Felsenthal's resignation, the Bankruptcy Case and all related adversary proceedings were reassigned to the undersigned judge.

[35] *See* APP TR-0416 – TR-0147.

[36] *See* APP TR-0006, ¶ 37.

[37] *See id.*

On August 18, 2005, Wilferth filed an amended proof of claim, assigned Claim No. 84 by the Clerk of the Court (the "Amended Claim"),[38] a true and correct copy of which is included in the Appendix as Exhibit "K" at TR-0209 through TR-0245. The Amended Claim specifically states that it is an amendment of the Original Claim.[39] In the Amended Claim, Wilferth asserts claims for the Debtor's alleged breach of the Employment Agreement and for the Debtor's alleged tortious interference with Wilferth's contract with Sagemark.

By ordered entered August 30, 2005 [Bankruptcy Case docket no. 536], the Court ordered the Trustee's Claim Objection to be consolidated with the Adversary Proceeding.[40]

On September 14, 2005, *John Wilferth's First Amended Response and Answer to Trustee's Objection to Claim of John Wilferth (Claim No. 24)* (the "Wilferth Amended Response to Trustee's Objection" [Adversary Proceeding docket no. 16] was filed,[41] a true and correct copy of which is included in the Appendix as Exhibit "A" at TR-0001 through TR-0052.

On October 11, 2005 the *Trustee's Amended Objection to Claim of John Wilferth (Claim No. 24), As Amended (Claim No. 84)* [Adversary Proceeding docket no. 20] (the "Trustee's Amended Claim Objection") was filed,[42] a true and correct copy of which is included in the Appendix as Exhibit "M" at TR-0248 through TR-0294, whereby the Trustee requested the disallowance in full of both the Original Claim and the Amended Claim.

On November 1, 2005, *John Wilferth's Response to Trustee's Amended Objection to Claim of John Wilferth (Claim No. 24)* [Adversary Proceeding docket no. 22] was filed, whereby

---

[38] *See* APP TR-0209 – TR-0245.

[39] *See* APP TR-0209.

[40] *See* APP TR-0246– TR-0247.

[41] *See* APP TR-0001– TR-0052.

[42] *See* APP TR-0248 – TR-0294.

Wilferth responded to the Trustee's Amended Claim Objection. A true and correct copy of this response is included in the Appendix as Exhibit "P" at TR-0320 through TR-0328.

On December 9, 2005, Plaintiff John Wilferth's Motion to Amend Proof of Claim (Claim 24) and Brief in Support Thereof [Adversary Proceeding docket no. 30] was filed, whereby Wilferth seeks leave to amend the Original Claim after the Bar Date.

## II.   LEGAL ANALYSIS

### A.   SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the record discloses that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c), applicable here in accordance with Fed. R. Bankr. P. 7056. A party seeking summary judgment bears the initial burden of identifying portions of pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the burden shifts to the non-moving party to show that summary judgment should not be granted. *See id*. at 324-25. In meeting its burden, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). But, when ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Id*.

### B.   WILFERTH'S CLAIM FOR BREACH OF CONTRACT IS BARRED BY LIMITATIONS

The Trustee contends that he is entitled to summary judgment with respect to Wilferth's claim for breach of the Employment Agreement because such claim is barred by the applicable statute of limitations. In this respect, the following material facts are relevant:

- the Debtor terminated Wilferth's employment on or about February 19, 1998;

- Wilferth alleges that his claim for breach of the Employment Agreement accrued on August 23, 1999, "when the Debtor notified Sagemark of the alleged non-compliance with and violation of the Employment Agreement."  APP TR-0168, ¶ 20;

- Wilferth failed to assert any claim for breach of the Employment Agreement in the State Court Action or in the Arbitration Proceeding;

- Wilferth failed to assert any claim for breach of the Employment Agreement at any time prior to September 14, 2004;

- on September 14, 2004, Wilferth asserted a claim for breach of the Employment Agreement in the Original Claim.

Based on these undisputed facts, and for the reasons explained more fully below, the Court concludes that summary judgment in the Trustee's favor is appropriate because Wilferth's claim for breach of the Employment Agreement is barred by limitations.  The Employment Agreement is governed by Texas state law.[43]  All of the acts and/or omissions giving rise to any breach of contract claim based on the Employment Agreement occurred in Texas.[44]  Therefore, Texas law governs any breach of contract claim based on the Employment Agreement.

The applicable statute of limitations for breach of contract under Texas law is provided by section 16.051 of the Texas Civil Practice and Remedies Code, and is statutorily set at four (4) years after the accrual of the claim.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2004).  *See also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).  The same four-year statute of limitations applied at all times relevant to any potential breach of contract claim that Wilferth may have against the Debtor.  *See, e.g., Williams v. Khalaf*, 802 S.W.2d 651, 653 (Tex. 1990).

---

[43]  *See* APP TR-0090 § 10.18.

[44]  *See* APP TR-0095 ¶ 2.

The date on which a breach of contract action accrues is a question of law. *See Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 389 (5th Cir. 2004); *Waxler v. Household Credit Servs. Inc.*, 106 S.W.3d 277, 279 (Tex. App. – Dallas 2003, no pet.). "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592 (*citing Smith v. Fairbanks, Morse & Co.*, 102 S.W. 908, 909 (Tex. 1907)); a*ccord Dell Computer Corp.*, 390 F.3d at 389.

Wilferth contends that the date of the alleged breach occurred "on the date that the Debtor sent the letter to Sagemark – August 23, 1999. Thus, the correct statute of limitations bar date is August 23, 2003." *See* APP TR-0325 – TR-0326, ¶ 35. While the Trustee disagrees with this contention, because Wilferth failed to explain how the sending of the Canada Letter constituted a breach of the Employment Agreement, for purposes of the Court's analysis, the Court will assume that the date of the alleged breach of the Employment Agreement was August 23, 1999, as Wilferth contends.

However, Wilferth failed to assert a claim against the Debtor for breach of the Employment Agreement by August 23, 2003. Although the State Court Action and the Arbitration Proceeding were then pending, Wilferth failed to assert a breach of contract claim in either proceeding.[45] Instead, Wilferth first asserted a claim against the Debtor for breach of the Employment Agreement when he filed the Original Claim on September 14, 2004 – a date more than one year after the expiration of the statute of limitations applicable to this claim.[46]

However, Wilferth contends that his breach of contract claim is "saved" from the running of the statute of limitations by virtue of section 16.068 of the Texas Civil Practices and Remedies Code, or by the so-called "relation-back doctrine." *See* Tex. Civ. Prac. & Rem. Code Ann. §

---

[45] *See* APP Exh. C; APP Exh. D.

[46] *See* APP Exh. E.

16.068.    According to Wilferth, the State Court Action "clearly sets forth the elements that are

the basis of a breach because of improper enforcement of the [Employment Agreement]."

Supplemental Brief of Plaintiff John Wilferth on the Issue of Breach of Contract/Limitations

(Adversary Proceeding docket no. 37) (the "Supplemental Brief") at p. 3.    Wilferth goes on to

explain that

> his suit asserted claims for injunctive and declaratory relief finding that the
> Employment Agreement was null and void and sought damages.    In
> particular, in the suit, Wilferth asked for declaratory relief under Chapter 37
> of the Texas Civil Practices and Remedies Code that the Agreement was
> null and void and that Heritage was guilty of improper enforcement of the
> void Agreement. . . .    The pleading also fully set forth the facts of these
> causes of actions [for injunctive and declaratory relief and for tortious
> interference] as arising out of the Agreement and the improper attempt to
> enforce it.    These facts encompassed more than three full pages, and would
> support an amendment under the relation-back doctrine so long as it relates
> to Heritage's actions related to the improper attempt to enforce the contract.

*Id*. Then, Wilferth gives an example of why his breach of contract claim is saved by the

allegations contained in the State Court Action – *i.e.*, because Wilferth alleged in the State Court

Action that "the contract is void ab initio with respect to the covenant [not to compete]," it

follows that the Debtor's attempts to enforce it "would be a breach."  *Id*.  In addition, according

to Wilferth, "there is a breach [of the Employment Agreement] with respect to Heritage's action

because the consent provision of the Agreement was not followed by Heritage in its disclosure to

Heritage [sic]."  *Id*.

While these arguments are a little hard to follow, the Court understands Wilferth to be

arguing that because he alleged that the Employment Agreement was void in the State Court

Action, the Debtor's efforts to enforce that void agreement gave rise to a cause of action for

breach of contract that would relate back to the original filing of the State Court Action.  The

Court disagrees for the reasons explained below.

First, what Wilferth actually alleged in the State Court Action was that he was "entitled to a declaratory judgment determining and finding that the Agreement is null and void because Heritage has attempted to enforce it to a greater extent than allowed by law." Opposition Appendix, Exhibit 7 at ¶ 16. Second, during oral argument on the Motion, the Court asked Wilferth's counsel if he had any case law to support his contention that enforcement of a void agreement gives rise to a breach of contract claim. He had none, but asked for the opportunity to support his contention with case law – hence the post-hearing briefing schedule referenced earlier and the filing of the Supplemental Brief by Wilferth and the Trustee's Response to Supplemental Brief of Plaintiff John Wilferth on the Issue of Breach of Contract/Limitations (Adversary Proceeding docket no. 38) (the "Trustee's Response"). And, as pointed out in the Trustee's Response, Wilferth failed to support his legal proposition with any case law in the Supplemental Brief.

To succeed on this argument, Wilferth must prove that the sending of the Canada Letter and the Debtor's attempt to enforce the Non-Compete support both a breach of contract claim and a tortious interference claim. In short, Wilferth must prove that the sending of the Canada Letter and the Debtor's attempt to enforce the Non-Compete constitute a breach by the Debtor of the Employment Agreement. Wilferth has failed in this regard because if the Employment Agreement is "null and void" as Wilferth alleged in the State Court Action, OPP APP Exhibit 7 at ¶ 16, there is no agreement to breach. Rather, as recognized by Wilferth himself in the State Court Action, "[t]he actions of Heritage in attempting to enforce the convenant not to compete to a greater extent allowed by law constitutes tortious interference with contractual relations [with Sagemark] and prospective contractual relationships [with other employers] of Wilferth." *Id*. at ¶ 20.

Because the sending of the Canada Letter and the Debtor's attempt to enforce the Non-Compete do not give rise to a breach of contract claim, that claim does not arise from the same transaction or occurrence as the tortious interference claim. Accordingly, the so-called relation-back doctrine provided by section 16.068 of the Texas Civil Practices and Remedies Code does not save Wilferth's breach of contract claim from the Texas four-year statute of limitations. See Tex. Civ. Prac. & Rem. Code Ann. § 16.068.

Section 502(b) of the Bankruptcy Code provides that a claim must be disallowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement *or applicable law*." 11 U.S.C. § 502(b)(1) (2004) (emphasis added). The phrase 'any applicable law' includes applicable statutes of limitation, and a claim that is barred by a statute of limitations must be disallowed under section 502(b)(1) of the Bankruptcy Code. *See, e.g., In re Eagle-Picher Indus. Inc.*, 201 B.R. 921, 922-23 (Bankr. S.D. Ohio 1996); *In re Ballato*, 188 B.R. 690, 692-93 (Bankr. M.D. Fla. 1995).

Accordingly, since Wilferth's claim for the Debtor's alleged breach of the Employment Agreement is barred by the applicable Texas statute of limitations, this claim is barred and must be disallowed under section 502(b)(1) of the Bankruptcy Code.

**C.     WILFERTH HAS NO CLAIM FOR BREACH OF CONTRACT**

Moreover, the Trustee is also entitled to summary judgment on Wilferth's breach of contract claim because Wilferth has failed to raise any evidence from which this Court could conclude that he has a valid claim against the Debtor for breach of the Employment Agreement. As noted previously, in the Original Claim, Wilferth asserts a claim for "breach of employment contract and damages."[47]    Wilferth's Amended Claim likewise states a claim for "breach of

---

[47] *See* APP TR-0102.

contract."[48]   However, Wilferth fails to state any facts, or make any allegations, in either the Original Claim or the Amended Claim, that would, if proven, support his breach of contract claim.

It is elemental that a proof of claim must assert facts or allegations, albeit perhaps informally, which would entitle the claimant to a recovery.  *See, e.g., In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) ("the claimant must allege facts sufficient to support the claim"); *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd* 91 F.3d 151 (9th Cir. 1996); *In re AVN Corp.*, 248 B.R. 540, 547 (Bankr. W.D. Tenn. 2000) ("[i]n order to enjoy the presumption of validity, a proof of claim must allege facts that would entitle the creditor to recovery").   In Texas, the elements of a claim for breach of contract are: (i) the existence of a valid contract; (ii) performance or tendered performance by the plaintiff; (iii) breach of the contract by the defendant; and (iv) damages to the plaintiff resulting from that breach.   *See, e.g., Harris v. American Protection Ins. Co.*, 158 S.W.3d 614, 622-23 (Tex. App. – Forth Worth 2005, no pet.); *Adams v. H&H Meat Prods. Inc.*, 41 S.W.3d 762, 771 (Tex. App. – Corpus Christi 2001, no pet.); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App. – Houston [14th Dist.] 2000, no pet.).

In this respect, Wilferth has never asserted or alleged any facts that, if proven, would support a claim for breach of the Employment Agreement.   Wilferth has neither asserted nor alleged any facts that identify the Debtor's alleged breach of that agreement.   All of Wilferth's facts and allegations forming the basis of the Debtor's alleged breach of the Employment Agreement center on the Canada Letter, his termination by Sagemark, and his alleged

---

[48]   *See* APP TR-0211.

corresponding damages – *i.e.*, on the Debtor's alleged violation of duties imposed by tort law. Wilferth's "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" his burden and are no substitute for at least pleading specific facts or allegations that would support each element of his breach of contract claim. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Since Wilferth failed to assert or allege any facts in the Original Claim or the Amended Claim that, if proven, would support a claim for breach of the Employment Agreement, both the Original Claim and the Amended Claim must be disallowed under section 502(b)(1) of the Bankruptcy Code to the extent that they assert a claim for breach of the Employment Agreement.

**D.      WILFERTH'S TORTIOUS INTERFERENCE CLAIM AND OTHER CLAIMS ENCOMPASSED BY THE AMENDED CLAIM ARE BARRED BY THE BAR DATE**

The Trustee is entitled to summary judgment disallowing the Amended Claim on the basis that the claims asserted therein, other than the breach of contract claim, are barred by the Bar Date and must be disallowed under section 502(b)(9) of the Bankruptcy Code.

**1.      First Mention of the Tortious Interference Claim Was After the Expiration of the Bar Date**

There is no dispute as to the following material facts:

- the Bar Date was set by this Court as September 15, 2004;[49]

- the only document or pleading filed or presented by Wilferth in the Bankruptcy Case prior to the expiration of the Bar Date was the Original Claim, and Wilferth asserted no additional claims or amendments of the Original Claim until he filed the Amended Claim after the Bar Date;

- the Original Claim contains no documents or pleadings as an attachment, and it does not mention or otherwise reference the State Court Action or the Arbitration Proceeding;[50]

---

[49]  *See* APP TR-0006, ¶ 34.

[50]  *See* APP TR-0102.

- the only stated basis for the Original Claim is "breach of employment contract and damages;"[51]

- by the time he filed the Original Claim, Wilferth knew that he held a claim for tortious interference, as evidenced by his prosecution of that claim in the State Court Action and in the Arbitration Proceeding;[52]

- the first mention in a filing with this Court by Wilferth of a claim for tortious interference with contract based on the Canada Letter and his termination by Sagemark was in the Wilferth Response to Debtor's Objection, filed by Wilferth on May 26, 2005 – well after the expiration of the Bar Date;[53]

- Wilferth neither sought nor obtained any leave from the Court to file an untimely claim;[54] and

- Wilferth filed the Amended Claim on August 18, 2005 – well after the expiration of the Bar Date.[55]

Based on these undisputed facts, the Court concludes that summary judgment in the Trustee's favor is appropriate because Wilferth's claims for anything other than breach of contract are barred by the Bar Date and must be disallowed under section 502(b)(9) of the Bankruptcy Code.

### 2.   The Amended Claim is not a Proper Amendment of the Original Claim

Wilferth filed the Amended Claim as a purported amendment of the Original Claim. However, Wilferth filed the Amended Claim well after the expiration of the Bar Date, which raises the question of whether the Amended Claim is truly an amendment of a timely filed claim, or whether it is a separate claim independently subject to the Bar Date.

---

[51]  *See id.*

[52]  *See* APP TR-0100; TR-0101.

[53]  *See* APP Exh. G.

[54]  While a motion to amend proof of claim was filed on December 9, 2006, Wilferth has never asked for a hearing on that motion.  However, the arguments raised in the motion are identical to those that Wilferth advances here.

[55]  *See* APP Exh.K.

When a claimant amends a timely filed claim after the expiration of the bar date, the law looks to the substance of the amended claim over its form to ensure that the claimant is not attempting to disguise an entirely new or separate claim in the form of an ostensible amendment of a prior claim. *See, e.g., United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985) ("the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment"). As held by the Fifth Circuit, "[b]ar dates [ ] are not to be vitiated by amendments." *In re Alliance Operating Corp.*, 60 F.3d 1174, 1175 (5th Cir. 1995). "[C]ourts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability." *In re Waindel*, 65 F.3d 1307, 1312 (5th Cir. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991)).

Accordingly, the mere styling of a proof of claim as an amendment of a previous claim is insufficient to make it a proper amendment. The test for what is a proper amendment of a timely filed proof of claim is whether the purported amendment asserts what is essentially a new claim: the "principal concern of claims amendments" is that "no *new claim* be tardily asserted." *In re Kolstad*, 928 F.2d at 175 (emphasis added); a*ccord In re Waindel*, 65 F.3d at 1312 (disallowing amendment that "set forth new grounds of liability"). Absent this hard and fast rule "a party could effectively help itself to automatic extensions of the bar date without seeking leave of the court." *In re Stavriotis*, 977 F.2d 1202, 1206 (7th Cir. 1992).

If the purported amendment is filed after the expiration of the bar date and is not a proper amendment of a timely filed proof of claim, then it is a wholly new proof of claim which must be disallowed under section 502(b)(9) of the Bankruptcy Code as being untimely filed. *See Waindel*, 65 F.3d at 1312 (affirming disallowance of claim amendment after bar date where

"amended proof of claim set forth new grounds of liability"); *In re Kolstad*, 928 F.2d at 175; *In re Andover Togs Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999) ("[a]mendments are disallowed when their purpose is to create a new claim"); *In re Ridgewood Apartments of DeKalb County Ltd.*, 174 B.R. 712, 716 (Bankr. S.D. Ohio 1994) ("[i]f the Amended Claim is not a proper amendment to the Original Claim, the amendment may be disallowed on that procedural basis").

Therefore, if the amended claim "set[s] forth new grounds of liability," or asserts a "new claim," it is not a proper amendment and must instead be considered as a separately filed new claim. *See Waindel*, 65 F.3d at 1312; *Kolstad*, 928 F.2d at 175. Conversely, amendments to proofs of claims are allowable, even after the expiration of the bar date, "to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Alliance Operating Corp.*, 60 F.3d at 175 (*quoting Kolstad*, 928 F.2d at 1175).

"[T]he one key factor behind allowing amendments is that the bankruptcy court already have notice of the *existence*, *nature*, and amount of the claim from the filing of the original claim." *Alliance Operating Corp.*, 60 F.3d at 1176 (emphasis added). Each of these three considerations is an element, meaning that the original claim must provide notice of the nature of the liability, in addition to its existence and amount, in order for the amendment to be valid. *Id.* (disallowing amendment to proof of claim changing claim from non-priority to priority status, because the original claim failed to provide notice of its nature).

Applying this law here, it is clear that the Amended Claim asserts grounds of liability not stated in the Original Claim, and that the Amended Claim is a new claim filed after the expiration of the Bar Date. The Original Claim failed to apprise the Court of the *existence* of a claim for tortious interference, or of the *nature* of Wilferth's claim as one existing in tort. All

that the Original Claim apprised this Court of was a claim against the Debtor for a breach of the Employment Agreement. This is fundamentally different from the Amended Claim, for at least the following reasons:

- the Original Claim sounds wholly in contract, while the Amended Claim sounds in tort;

- the Original Claim suggests that the Debtor committed an actionable wrong with respect to *its* contract with Wilferth, as opposed to *Wilferth's* contract with a third party;

- the Original Claim suggests a claim related to Wilferth's employment by the *Debtor*, as opposed to Wilferth's employment by *Sagemark*; and

- the Original Claim makes no mention of the Canada Letter or the Non-Compete, which form the critical bases for the Debtor's alleged liability.

In short, a reasonable person could not infer from the Original Claim that Wilferth had a claim against the Debtor related to Sagemark's termination of Wilferth or the transmission of the Canada Letter. Nor could a reasonable person infer from the Original Claim that a claim for tortious interference existed based on the Canada Letter and Wilferth's termination by Sagemark. *See, e.g., Alliance Operating Corp.*, 60 F.3d at 1176 (holding that one element of permitting amendment is that court already had notice of the existence of the claim). Finally, a reasonable person could not infer that the nature of Wilferth's claim was in tort. *See id.* (holding that additional element of permitting amendment is that court already had notice of the nature of the claim).

Moreover, to the extent that an amendment is legally permissible "to cure a defect in the *claim* as originally filed, to describe the *claim* with greater particularity or to plead a new theory of recovery on the facts set forth in the original *claim*," the Amended Claim again fails to be a proper amendment. *In the Matter of Alliance Operating Corp.*, 60 F.3d at 175 (emphasis added).

Each of these avenues for amendment contemplates and requires an action on a prior claim; they do not contemplate or authorize the filing of a new claim.

With respect to curing a defect in a claim as filed, Wilferth's claim as originally filed was for breach of the Employment Agreement. The Amended Claim is not a cure of some defect in this claim, but is instead a wholly separate and new claim. Similarly, the Amended Claim was not filed to describe the breach of contract claim with greater particularity, since the Amended Claim in no way relates to the breach of contract claim but instead only asserts a new and separate claim. With respect to pleading a new theory of recovery on the facts set forth in an original claim – the Original Claim fails to set forth any facts or allegations whatsoever from which any new theory of recovery could be derived. *See, e.g., In re Enron Corp.*, 328 B.R. 75, 89 (Bankr. S.D.N.Y. 2005) ("[c]ourt agrees that the amendment would change the nature of the original Claims by introducing significantly different factual and legal allegations").

### 3. The Debtor's or Trustee's Knowledge of the Tortious Interference Claim is Immaterial

Wilferth contends that an amendment is proper here because the Debtor knew about his tortious interference claim long before the Bankruptcy Case was filed. And, according to Wilferth, the Debtor scheduled his claim (albeit as contingent, unliquidated, and disputed) and noted the existence of the Arbitration and the State Court Action in its Statement of Financial Affairs. Accordingly, Wilferth contends that the Amended Claim should be deemed a timely filed claim.

However, it is immaterial that the Debtor or the Trustee may have known about the nature of Wilferth's tortious interference claim. *See, e.g., Clark v. Valley Fed. Sav. & Loan Ass'n (In re Reliance Equities Inc.)*, 966 F.2d 1338, 1345 (10th Cir. 1992); *In re Farmland Indus. Inc.*, 318 B.R. 159, 164 (Bankr. W.D. Mo. 2004) ("debtor's or trustee's knowledge of a

claim is not enough to constitute an informal proof of claim"). "Mere knowledge of the existence of the claim by the debtor, trustee, or bankruptcy court is insufficient." *In the Matter of Wilkens*, 731 F.2d 462, 465 (7th Cir. 1984); *accord United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1217 (11th Cir. 1985) ("mere notice of a claim alone is not to be called an informal proof of claim and does not excuse the absence of a proper timely proof . . . An informal claim may be asserted, if it can be at all, only when it is apparent that the creditor intends to seek recovery from the estate"). As held by this Court, "Debtor's knowledge of the claim has never been held sufficient to constitute an informal proof of claim." *In re Murchison*, 85 B.R. 37, 41 (Bankr. N.D. Tex. 1987).

Similarly, the "debtor's scheduling of a creditor's disputed claim is also inadequate to prove a claim." *In re Square Shooter Inc.*, 130 B.R. 108, 109 (Bankr. S.D. Ala. 1991); *accord Biscayne 21 Condo. Ass'n Inc. v. South Atl. Fin. Corp. (In re South Atl. Fin. Corp.)*, 767 F.2d 814, 819 (11th Cir. 1985) ("the debtor's scheduling of a creditor's 'disputed, contingent, or unliquidated' claim does not constitute an amendable proof of claim; to hold otherwise, would completely eviscerate the statutory requirement that such creditor file a formal proof of claim"); *In re Pigott*, 684 F.2d 239, 245 (3d Cir. 1982) ("listing a claim in the schedule of creditors is not the equivalent of filing a proof of claim"). The Debtor scheduled Wilferth's claim as contingent, unliquidated, and disputed.[56] This required Wilferth to *timely* file a proof of claim, or else lose any right to distribution on account of his claim. *See* FED. R. BANKR. P. 3003(c)(2). Having failed to timely file a proof of claim with respect to his tortious interference claim, Wilferth cannot rely on the very triggers that required him to file a claim in the first instance – *i.e.*, the

---

[56] *See* APP TR-0019.

claim being scheduled as contingent, unliquidated, and/or disputed – to obviate the requirement that he file a proof of claim.

Therefore, it does not matter that (i) the Debtor or the Trustee may have had actual knowledge of Wilferth's tortious interference claim, (ii) the Debtor may have listed the Arbitration Proceeding or the State Court Proceeding on its Statement of Financial Affairs, or (iii) the Debtor may have scheduled Wilferth as a disputed creditor. The simple fact remains that Wilferth knew he had a tortious interference claim against the Debtor and he failed to assert any claim in the Bankruptcy Case, whether formal or informal, for tortious interference prior to the expiration of the Bar Date.

### III. CONCLUSION

The Amended Claim is not a proper amendment of the Original Claim, since the Amended Claim asserts claims and grounds for liability that are not stated in the Original Claim and that cannot be logically inferred from the Original Claim. At no time prior to the expiration of the Bar Date did Wilferth assert any facts or allegations related to an alleged tortious interference claim in the Bankruptcy Case. Accordingly, to the extent that the Amended Claim asserts a claim for anything other than breach of the Employment Agreement, it must be disallowed under section 502(b)(9) of the Bankruptcy Code because of Wilferth's failure to assert any such claim in the Bankruptcy Case prior to the expiration of the Bar Date.

And, the breach of contract claim asserted in both the Original Claim and the Amended Claim must be disallowed under section 502(b)(1) of the Bankruptcy Code because it is barred by limitations and/or because Wilferth has never asserted any facts that, if proven, would support a breach of contract claim against the Debtor.

For these reasons, the Motion is granted, the Trustee's Amended Claim Objection is granted, and the Original Claim and the Amended Claim are disallowed.[57]

While Wilferth filed a motion to amend his proof of claim on December 9, 2006, he has never asked for a hearing on that motion.  However, the arguments raised in the motion to amend are identical to those raised here.  Accordingly, and for the reasons set forth herein, the Court concludes that amendment would be futile and that the motion to amend must be denied.

SO ORDERED.

### End of Order ###

---

[57]  The Trustee sought additional relief in the Motion.  Specifically, the Trustee sought this Court's determination that (i) the Debtor's alleged actions could not, as a matter of law, constitute the proximate cause of any tortious interference claim, and (ii) the defense of legal justification is a complete defense to any alleged liabilitiy for Wilferth's tortious interference claim.  The Court did not need to reach these issues to conclude that the Original Claim and the Amended Claim must be disallowed.